UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL S. JOHNSON,

               Plaintiff,

v.                                         **DECISION AND ORDER**
                                                     03-CV-356S
D. KACHELMEYER, N. BUTH, SGT. HIRSCH,
R. PISTNER, B. ODACHOWSKI, G. PRITCHARD,
OFFICER JOHN DOE, MEDICAL PROVIDER
JOHN DOE, MEDICAL PROVIDER JANE DOE,
DR. TAKOS, DR. LASKOWSKI, HIGLEY,
EDWARDS and MAGEE,[1]

               Defendants.
_____

## I. INTRODUCTION

In this action, pro se Plaintiff Michael S. Johnson alleges pursuant to 42 U.S.C. § 1983 that Defendants violated his Eighth Amendment rights by physically assaulting him and denying him adequate medical treatment while he was an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). Presently before this Court is Defendants' unopposed Motion for Summary Judgment.[2] This Court has reviewed and considered Defendants' motion papers and finds that oral argument is unnecessary. For the following reasons, Defendants' motion is granted in its entirety.

---

[1] Plaintiff has not identified or served the John and Jane Doe Defendants, nor has he set forth any reasons why they should not be dismissed. In any event, because the John and Jane Doe Defendants are alleged to have engaged in conduct similar to either those defendants who have already been dismissed or the named Defendants who are parties to this motion, this Court will dismiss Plaintiff's claims against the John and Jane Doe Defendants.

[2] In support of their Motion for Summary Judgment, Defendants filed the following documents: a memorandum of law, a Rule 56 Statement of Undisputed Facts, the Declaration of Barbara Higley, the Declaration of Joseph Cieslak, with attached exhibits, the Declaration of Robert Magee, the Declaration of Robert Takos, M.D., the Declaration of Stephen Laskowski, M.D., and the Declaration of Thomas Edwards. Plaintiff did not file a response to Defendants' motion.

1

## II. BACKGROUND

### A.  Procedural History

Plaintiff's Complaint was transferred to this district from the Northern District of New York on May 1, 2003. Because Plaintiff was granted *in forma pauperis* status, his Complaint was screened pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a). Two claims remain from Plaintiff's Complaint. First, Plaintiff alleges that Defendants Kachelmeyer, Buth, Pistner, Odachowski, Pritchard and Hirsch assaulted him in violation of his Eighth Amendment rights. Second, Plaintiff alleges that Defendants Laskowski, Takos, Magee, Edwards and Higley denied him medical treatment in violation of the Eighth Amendment.

Defendants filed the instant Motion for Summary Judgment on April 6, 2005. Accompanying the motion was the required IRBY notice, which warned Plaintiff that his failure to respond to the motion could result in dismissal of his case. See Irby v. New York City Transit Auth., 262 F.3d 412 (2d Cir. 2001)(per curiam). Plaintiff subsequently moved for an extension of time to file his response. This Court granted that request, explicitly warned Plaintiff that his failure to file a response could lead to Defendants' motion being granted, and sent Plaintiff another IRBY notice. This Court twice more extended Plaintiff's time to file a response *sua sponte* after Plaintiff failed to file his response as directed. Each time Plaintiff was warned of the consequences for his failure to act. To date, Plaintiff has not responded to Defendants' Motion for Summary Judgment.[3]

---

[3]This Court notes that under this district's local rules, Plaintiff's failure to file a response to Defendants' motion constitutes an independent basis upon which to grant summary judgment. See Local Rule 7.1(e). Nonetheless, because Plaintiff is proceeding pro se, this Court has examined his case on the merits.

**B.    Facts**

"When a party has moved for summary judgment on the basis of asserted facts supported as required by Fed.R.Civ.P. 56(e) and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992). Here, despite two IRBY notices, four Scheduling Orders and five warnings of the consequences for his failure to respond, Plaintiff has filed nothing. Because Plaintiff has failed to file a response to Defendants' Motion for Summary Judgment, this Court assumes the truth of the following facts asserted by Defendants, all of which are supported in the record. See Local Rule 56.1(c) (statements of undisputed fact that are not controverted by the non-moving party are deemed admitted); Cassidy v. Nicolo, No. 03-CV-6603, 2005 WL 3334523, at *2 (W.D.N.Y. Dec. 7, 2005) (facts asserted by the defendants deemed admitted where Plaintiff failed to file a response).

    **1.    Plaintiff's Assault Claim**

        **a.    Allegations in Plaintiff's Complaint**

Plaintiff alleges that on or about May 2, 2001, he and another inmate were speaking in sexually explicit terms about Defendant Kachelmeyer, a female corrections officer who was patrolling the yard at the time. (Complaint, p. 8-9.) Plaintiff further alleges that a John Doe male corrections officer who was searching cells on the company overheard the conversation and said to Plaintiff, "I'll see to it that you pay for it later." (Complaint, p. 9.)

Five days later, on May 7, 2001, Plaintiff was allegedly isolated in a corridor by

3

several corrections officers. (Complaint, p. 10.) Plaintiff was approached by Defendant Kachelmeyer, who referenced Plaintiff's prior derogatory comments and then allegedly struck Plaintiff with her hand on the left side of his face. (Complaint, p. 11.) Plaintiff alleges that he was then punched in the back of his head multiple times and kicked in the back by Defendants. (Complaint, p. 11.) Plaintiff contends that Defendants continued to beat him, and at one point Defendant Buth kicked him in the face while Plaintiff's hands were cuffed behind his back. (Complaint, p. 12.) Plaintiff alleges that Defendants Kachelmeyer, Odachowski, Pistner, Buth and Prichard all took part in the beating. (Complaint, p. 12.) Plaintiff further alleges that Defendant Hirsch was present during the assault, but did nothing to stop it. (Complaint, p. 12.) Plaintiff alleges that after the assault, he was further threatened by Defendants and placed in the Special Housing Unit ("SHU"). (Complaint, p. 12.)

### b. Defendants' Undisputed Facts

The grievance process is started when an inmate files a grievance with the Grievance Clerk at the inmate's facility. (Defendants' Statement of Undisputed Facts ("Defendants' Statement"), ¶ 10.) The grievance must generally be filed within 14 calendar days of the alleged occurrence. (Defendants' Statement, ¶ 11.) After the grievance is filed, the Inmate Grievance Review Committee ("IGRC") reviews the grievance and resolves it or prepares a recommended resolution. (Defendants' Statement, ¶ 12.)

If the inmate does not agree with the IGRC's resolution of his grievance, he can appeal to the Superintendent, and from there, to the Central Office Review Committee ("CORC"). (Defendants' Statement, ¶ 14.) Appeals must be filed with the Grievance Clerk within 4 working days after receipt of the written decision. (Defendants' Statement, ¶ 15.)

Inmates may file grievances for any allegations of harassment or employee misconduct meant to annoy, intimidate or harm an inmate, such as assault. (Defendants' Statement, ¶ 16.) On July 30, 2001, Plaintiff filed a grievance under grievance number 21573-01, alleging that he had been assaulted by staff on May 2, 2001. (Defendants' Statement, ¶ 22.) Plaintiff's grievance was dismissed by the Superintendent as untimely. (Defendants' Statement, ¶ 23.)

### 2. Plaintiff's Inadequate Medical Treatment Claim

#### a. Allegations in Plaintiff's Complaint

Plaintiff alleges that he was injured as a result of being beaten by Defendants. (Complaint. p. 12-13.) Specifically, Plaintiff asserts that the day after the beating, May 8, 2001, his whole body hurt, especially his left leg and foot, which had been twisted badly by Defendants. (Complaint, p. 13.) He alleges that he had multiple lacerations, abrasions and contusions on his face that were swollen. (Complaint, p. 13.) He further contends that his head and back hurt. (Complaint, p. 13.) Plaintiff alleges that he requested a sick call and brought his injuries to the attention of Defendants Laskowski, Takos, Magee, Edwards and Higly, but they did not provide him treatment. (Complaint, p. 13.)

#### b. Defendants' Undisputed Facts

Defendants Laskowski and Takos were employed by the DOCS as medical doctors. (Defendants' Statement, ¶ 7.) Defendants Edwards and Magee were employed by the DOCS as physician's assistants. (Defendants' Statement, ¶ 8.) Defendant Higley was employed as a nurse. (Defendants' Statement, ¶ 9.)

According to prison records, Plaintiff was admitted to SHU on May 7, 2001, after a

5


use of force incident. (Defendants' Statement, ¶ 24.) He was seen that day by Nurse Stewart,[4] who found that Plaintiff had three visible contusions and noted that Plaintiff limped on his left side. (Defendants' Statement, ¶¶ 25, 27.) Plaintiff also complained of decreased range of motion in his left arm, pain in his left ankle and numbness in his left ribs and side. (Defendants' Statement, ¶ 26.) Nurse Stewart gave Plaintiff 10 packets of Tylenol for pain and scheduled Plaintiff for a follow-up visit. (Defendants' Statement, ¶ 27.)

Plaintiff was next seen two days later by Defendant Magee on May 9, 2001. (Defendants' Statement, ¶ 28.) At that time, Plaintiff complained of a sore back. (Defendants' Statement, ¶ 29.) Defendant Magee noted the existence of contusions, but found that Plaintiff was in no acute distress and was pacing the cell normally. (Defendants' Statement, ¶¶ 29, 30.) Defendant Magee prescribed 400 mg of Motrin for pain relief to be taken twice daily. (Defendants' Statement, ¶ 30.)

On May 11, 2001, Plaintiff was seen by Defendant Laskowski. (Defendants' Statement, ¶ 31.) Plaintiff complained of blood in his urine due to trauma. (Defendants' Statement, ¶ 31.) Defendant Laskowski ordered blood work to be completed. (Defendants' Statement, ¶ 32.) The blood work came back normal in all respects. (Defendants' Statement, ¶ 32.)

Plaintiff was next examined by Defendant Edwards on May 16, 2001. (Defendants' Statement, ¶ 33.) Defendant Edwards noted that Plaintiff complained of left ankle pain and difficulty bearing weight on his ankle. (Defendants' Statement, ¶ 33.) Upon examination, Defendant Edwards found that Plaintiff's ankle was slightly swollen. (Defendants'

---

[4] Nurse Stewart has not been named as a defendant in this action.

Statement, ¶ 34.) He diagnosed Plaintiff with an ankle sprain and ordered an X-ray as a precautionary measure. (Defendants' Statement, ¶¶ 34, 35.)

On May 19, 2001, Plaintiff saw Defendant Laskowski again. Defendant Laskowski noted that Plaintiff had minimal relief in his left ankle and that Plaintiff would not attempt to move his ankle. (Defendants' Statement, ¶ 36.) Defendant Laskowski noted that he was aware that Defendant Edwards had ordered a precautionary X-ray. (Defendants' Statement, ¶ 37.) Defendant Laskowski concluded that no additional treatment beyond what was already being provided was medically necessary. (Defendants' Statement, ¶ 39.)

Considering Plaintiff's complaints and objective observations by the medical staff, it appeared that Plaintiff suffered a sprained ankle. (Defendants' Statement, ¶ 40.) Other than an X-ray to rule out a fracture and continued pain management medication, no further treatment was warranted. (Defendants' Statement, ¶ 40.)

Plaintiff was transferred out of Attica on June 12, 2001. (Defendants' Statement, ¶ 41.) On June 18, 2001, Plaintiff filed Grievance No. SPT 21223-01, alleging that he did not receive proper medical assistance after the assault. (Defendants' Statement, ¶ 18.) Therein, Plaintiff requested a "mandatory M.R.I. & X-ray treatment for my injuries, also tougher penalties against the medical staff for failure to do so." (Defendants' Statement, ¶ 19.) The IGRC denied Plaintiff's grievance after finding that Plaintiff had a non-emergency X-ray pending and there was no need for an MRI. (Defendants' Statement, ¶ 20.) Plaintiff did not appeal this determination. (Defendants' Statement, ¶ 21.)

On July 31, 2001, Plaintiff received the X-ray that Defendant Edwards had ordered. (Defendants' Statement, ¶ 42.) The X-ray indicated that there was no fracture or other abnormality in the ankle, which confirmed the diagnosis of a sprain. (Defendants'

7

Statement, ¶ 43.)

### III. DISCUSSION

Defendants have moved for summary judgment on both of Plaintiff's claims. As a threshold matter, Defendants argue that Defendants Takos and Higley are entitled to summary judgment because there is no evidence that they were personally involved in the alleged constitutional violation. (Defendants' Statement, ¶ 45.) Defendants also argue that Plaintiff has failed to exhaust his administrative remedies for both claims. Moreover, Defendants argue that they are entitled to summary judgment on Plaintiff's denial of medical care claim because Plaintiff has failed to establish a violation of his Eighth Amendment rights. Finally, Defendants argue that they are entitled to the protections of qualified immunity. Each of Defendants' arguments is addressed below.

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56©. A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson, 477 U.S. at 248. In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of

evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At this stage, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment is not appropriate if "there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." Ford, 316 F.3d at 354.

When deciding a motion for summary judgment, a court must view the evidence and the inferences drawn from the evidence "in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S.Ct.1598, 1609, 26 L.Ed.2d 142 (1970). However, the party against whom summary judgment is sought "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).

**B.    Personal Involvement**

Personal involvement in the deprivation of federal constitutional rights is the *sine qua non* of liability under § 1983. See Haygood v. City of New York, 64 F.Supp.2d 275, 280 (S.D.N.Y. 1999). Moreover, it is well settled in this Circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983. See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977);

9

Richardson v. Coughlin, 101 F.Supp.2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, *5 (S.D.N.Y. Jan. 3, 2000).  The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).

Defendants contend that neither Defendant Takos nor Defendant Higley were involved in Plaintiff's medical treatment.  (Defendants' Statement, ¶ 45.)  Both of these Defendants have filed affidavits indicating that they never had any personal contact with Plaintiff or provided him with medical treatment.  (Takos Decl., ¶¶ 5, 6; Higley Decl., ¶ 5.)  Because Plaintiff has failed to file a response in opposition to Defendants' motion, these facts are deemed admitted.  Based on these undisputed facts, this Court finds that Defendants Takos and Higley lack the personal involvement required to sustain liability under § 1983.  Consequently, summary judgment in their favor is warranted.

**C.   Exhaustion**

As a general rule, administrative exhaustion is not required of individuals pursuing civil rights claims pursuant to 42 U.S.C. § 1983.  See Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 516, 102 S.Ct, 2557, 2568, 73 L.Ed.2d 172 (1982).  However, "in an attempt to reduce the perceived burdensome flow of prisoner litigation," Congress passed the Prison Litigation Reform Act of 1995, which mandates that state prisoners exhaust all administrative remedies available to them as a prerequisite to filing suit in federal court under § 1983.  McCoy v. Goord, 255 F.Supp.2d 233, 240 (S.D.N.Y. 2003); see 42 U.S.C.

§ 1997 e(a).

Forty-two U.S.C. § 1997 e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

In Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958 (2001), the Supreme Court held that the exhaustion requirement applies even when a prisoner seeks relief that is not available in administrative grievance proceedings. See Booth, 532 U.S. at 741. In Porter v. Nussle, 534 U.S. 516, 524-25, 122 S.Ct, 983, 988, 152 L.Ed.2d 12 (2002), the United States Supreme Court resolved the issue of whether §1997 e(a) requires administrative exhaustion for only suits raising claims applicable to prisoners generally, or to all prisoner suits, including those alleging single incidents of misconduct by state actors. See Porter, 534 U.S. at 520. After examining the history and intent of §1997 e(a), the Supreme Court held that the "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532.

In New York, in order for an inmate to exhaust his administrative remedies he must first submit a complaint to the IGRC within 14 calendar days of an alleged occurrence. 7 N.Y.C.C.R. § 701.7 (a)(1) (2003). However, "exceptions to this time limit may be approved by the IGP [Inmate Grievance Panel] supervisor based on mitigating circumstances (e.g., attempts to resolve informally by the inmate, referrals back to the IGP by the courts, etc.)." Id. The inmate can appeal the decision of the IGRC first to the facility Superintendent, and then to the CORC. Id. at (b)-(c). Only after an inmate appeals to the CORC is he deemed

11

to have fully exhausted his administrative remedies. Colon v. Harvey, 344 F.Supp.2d 896, 897 (W.D.N.Y. 2004).

Courts in this circuit have generally held that "failure to file a timely grievance constitutes failure to exhaust administrative remedies as required by the PLRA." Cole v. Miraflor, No. 02 Civ. 9981, 2003 WL 21710760, at *2 (S.D.N.Y. July 23, 2003); see Petit v. Bender, No. 99 Civ. 0969, 2003 WL 22743485, at *5 (S.D.N.Y. Nov. 19, 2003); Long v. Lafko, 254 F.Supp.2d 444, 447-48 (S.D.N.Y. 2003); Scott v. Gardner, 287 F.Supp.2d 477, 489 (S.D.N.Y. 2003); Patterson v. Goord, No. 02 Civ. 759, 2002 WL 31640585, at *1 (S.D.N.Y. Nov. 21, 2002); contra Rivera v. Goord, 253 F.Supp.2d 735, 753 (S.D.N.Y. 2003) (requiring IGP to consider untimely grievance on merits since "[i]t would be highly unfair to permit DOCS to now reject Rivera's grievances as untimely, when he was not required to exhaust when he filed suit, at the same time that DOCS can assert nonexhaustion as a defense").

When the IGP refuses to accept and file an untimely grievance, it becomes impossible for an inmate to exhaust his administrative remedies, and any federal claims that would have arisen from the incident alleged in the untimely grievance are barred from judicial adjudication. See Cole, 2003 WL 21710760, at *2; Petit, 2003 WL 22743485, at *5; Long, 254 F.Supp.2d at 447-48; Scott, 287 F.Supp.2d at 489; Patterson, WL 31640585, at *1.

While "corrections officials are entitled to strict compliance with administrative procedures," some courts have recognized that in exceptional circumstances, equity allows for waiver of the exhaustion requirement. Rivera, 253 F.Supp.2d at 746-47 (discussing categories of cases where exhaustion waived). For instance, "[a] plaintiff may proceed

12

despite nonexhaustion where he has been 'led to believe by prison officials that his alleged incident was not a "grievance matter" and assured that his claims were otherwise investigated.'" Rivera, 253 F.Supp.2d at 746 (quoting O'Connor v. Featherston, No. 01 Civ. 3251, 2002 WL 818085, at *2 (S.D.N.Y. Apr. 29, 2002)).

Moreover, the exhaustion requirement may be waived "where a plaintiff has been led to believe that administrative remedies were unavailable." Id. at 747. The exhaustion requirement may also be waived where "officials prevented [the plaintiff] from utilizing a grievance procedure." Arnold v. Goetz, 245 F.Supp.2d 527, 537 (S.D.N.Y. 2003). Finally, the exhaustion requirement may be waived where "the state's time to respond to the grievance has expired." O'Connor, 2002 WL 818085, at *2.

In the present case, there is no compelling reason to set aside the exhaustion requirement, and it is undisputed that Plaintiff has failed to exhaust his administrative remedies. First, as to Plaintiff's assault claim, his untimely grievance was dismissed by the Superintendent and Plaintiff took no further action. (Defendants' Statement, ¶ 23.) Any further judicial action related to this incident is therefore barred. See Cole, 2003 WL 21710760, at *2; Petit, 2003 WL 22743485, at *5; Long, 254 F.Supp.2d at 447-48; Scott, 287 F.Supp.2d at 489; Patterson, WL 31640585, at *1. Second, as to Plaintiff's denial of medical care claim, it is undisputed that Plaintiff failed to appeal the IGRC's denial of his grievance. (Defendants' Statement, ¶ 21.) Accordingly, Defendants' are entitled to summary judgment under the Prison Litigation Reform Act of 1995 since it is undisputed that Plaintiff failed to exhaust his administrative remedies. See 42 U.S.C. § 1997 e(a).

**D.     Eighth Amendment Claim: Denial of Medical Treatment**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. See 42 U.S.C. § 1983. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged. See Baker, 443 U.S. at 140. Here, Plaintiff's § 1983 claim is grounded in the Eighth Amendment.

The Eighth Amendment to the United States Constitution applies to the States through the Fourteenth Amendment, and "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 11 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991); U.S. Const. amend. VIII. As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment. See DeShaney v. Winnebago County Dept. of Social Svcs., 489 U.S. 189, 199-200, 109 S.Ct. 998, 1005-1006, 103 L.Ed.2d 249 (1989). In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison

doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

. . .

> In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 292, 50 L.Ed.2d 25 (1976)(quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components--one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7-8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)). With respect to a claim of deliberate indifference to a serious medical need, a prisoner must show that he suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21 (citations omitted). The objective component is "contextual and responsive to contemporary standards of decency." Id. (quoting Hudson, 503 U.S. at 8).

> "An official acts with the requisite deliberate indifference when he 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"

Brown v. Picarelli, No. 96 Civ. 1222, 2003 WL 1906180, at *6 (S.D.N.Y. Apr. 15, 2003)(quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994)).

This Court has reviewed the record before it. Due to the absence of a response from Plaintiff, there are no genuine issues of material fact regarding Plaintiff's Eighth Amendment denial of medical treatment claim. Viewing the evidence in the light most favorable to Plaintiff, as required, this Court finds that Plaintiff's claim fails.

Plaintiff's claim is that Defendants Takos, Laskowski, Edwards, Magee and Higley failed to provide him medical treatment for the injuries he sustained in the alleged assault. (Complaint, p. 13.) This allegation is entirely contradicted by the record evidence, which shows that Plaintiff received immediate attention from the medical staff at Attica.

The alleged assault occurred on May 7, 2001. Plaintiff was taken to the SHU immediately following the altercation. He was seen that same day by Nurse Stewart, who examined him, provided him with pain medication, and scheduled him for a follow-up appointment. Over the course of the next twelve days, Plaintiff was examined five times by four different medical providers, including a medical doctor and two physician's assistants. His condition was correctly diagnosed as an ankle sprain, as confirmed by an X-ray. During the entire course of his care, Plaintiff was provided with pain management medication to keep him comfortable. Based on these facts, no reasonable jury could find that Defendants' failed to provide Plaintiff medical treatment for his injuries.

Moreover, as a matter of law, Plaintiff cannot sustain his claim.  First, there is no evidence that the several contusions and ankle injury that Plaintiff suffered ever rose to the level of a "sufficiently serious" medical condition.  More than minor discomfort or injury is required in order for a plaintiff to demonstrate a serious medical condition.  See Evering v. Rielly, No. 98 CIV. 6718, 2001 WL 1150318, *9 (S.D.N.Y. Sept. 28, 2001). The alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hathaway, 99 F.3d at 553; see also Chance v. Armstrong, 143 F.3d at 702.

The Second Circuit has set forth a number of factors to be considered when determining whether a serious medical condition exists.  See Chance, 143 F.3d at 702. These factors include, but are not limited to, "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain."  Chance, 143 F.3d at 702 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992) (citations omitted)).

There are numerous examples of injuries that courts have found to be too lacking in seriousness to raise Eighth Amendment concerns.  See, e.g., Rivera v. Johnson, No. 95 CIV. 0845E(H), 1996 WL 549336 at *2 (W.D.N.Y. Sept. 20, 1996) (broken finger); Glasper v. Wilson, 559 F.Supp. 13 (W.D.N.Y. 1982) (lack of immediate medical attention for bowel problems); Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F.Supp.2d 303 (S.D.N.Y. 2001) (cut finger); Henderson v. Doe, No. 98 CIV. 5011, 1999 WL 378333 (S.D.N.Y. June 10, 1999) (broken finger); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir. 1980) (cold symptoms); Dickson v. Colman, 569 F.2d 1310 (5th Cir. 1978) (per curiam)

(headaches); Tyler v. Rapone, 603 F.Supp. 268 (E.D.Pa. 1984) (toothache and cut).

There are also numerous examples of injuries found to be sufficiently serious to satisfy the Eighth Amendment standard. See Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (brain tumor); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (two year delay in arranging hip surgery); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (loss of an ear); Corby v. Convoy, 457 F.2d 251 (2d Cir. 1972) (serious nasal problem); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (abortion); Griffin v. DeRobertis, 557 F.Supp 302, 306 (N.D.Ill. 1983) (spitting up blood).

Plaintiff's several contusions and sprained ankle clearly fall into the former category of injuries that are not sufficiently serious to raise an Eighth Amendment claim. See Coqueran v. Eagen, No. 98-CV-7185, 2000 WL 96768, at *4 (E.D.N.Y. Jan. 20, 2000) (painful sprained ankle does not satisfy sufficiently serious requirement); cf. Warren v. Purcell, No. 03 Civ. 8736, 2004 WL 1970642, at *8 (S.D.N.Y. Sept. 3, 2004) (swollen ankle and other ailments not sufficiently serious to rise to the level of an Eighth Amendment violation);; Alston v. Howard, 935 F.Supp. 1034, 1040-41 (S.D.N.Y. 1996) (ankle pain after surgery was not sufficiently serious for Eighth Amendment purposes).[5]  There is simply no suggestion in the record, let alone any evidence, that Plaintiff suffered from an untreated medical condition that was "sufficiently serious, in the sense that [it was] a condition of urgency, one that may produce death, degeneration, or extreme pain." Hemmings v.

---

[5]This Court further notes the Second Circuit's unpublished opinion in Chatin v. Artuz, in which the court found that an ankle condition variously diagnosed as "a sprained ankle, a bone spur, and a neuroma" did not rise to the level of seriousness that the Eighth Amendment requires.  28 Fed. Appx. 9, 10 (2d Cir. 2001) (unpublished).

Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998).

Moreover, Plaintiff cannot demonstrate that Defendants acted with a sufficiently culpable state of mind to meet the deliberate indifference standard. See Hathaway, 37 F.3d at 66. To the contrary, the record contains evidence that demonstrates that Plaintiff received immediate and continuing medical treatment. Defendants were aware that Plaintiff suffered injuries, they evaluated his condition, and they provided him treatment, including pain medication and diagnostic testing. Based on the record evidence, no reasonable trier of fact could conclude that Defendants knew of and disregarded a serious medical condition that presented an excessive risk to Plaintiff's health. See id.

Accordingly, for the reasons stated above, this Court finds that Defendants are entitled to summary judgment on Plaintiff's claim that he was denied medical treatment in violation of his Eighth Amendment rights.

**E.    Qualified Immunity**

Defendants argue that, even assuming that there was a constitutional deprivation of Plaintiff's right to medical treatment, they are entitled to qualified immunity. Officials are protected from § 1983 liability on the basis of qualified immunity if their actions (1) did not violate clearly established law or (2) it was objectively reasonable for the officials to believe that their actions did not violate the law. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999).

As discussed above, this Court finds Defendants' treatment of Plaintiff was reasonable and adequate. Moreover, it is objectively reasonable to conclude that Defendants' believed that their own actions were reasonable: they examined Plaintiff

several times immediately following the alleged assault, they evaluated and assessed his condition, they provided ongoing medical treatment, including pain management medication and medical tests, and they ordered a precautionary X-ray examination. Accordingly, this Court finds that even assuming the existence of a constitutional violation, Defendants are entitled to qualified immunity on Plaintiff's claim that he was denied adequate medical care.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that Defendants' are entitled to summary judgment on both of Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies. Moreover, Defendants' are entitled to summary judgment on the merits on Plaintiff's claim that Defendants' denied him medical care in violation of the Eighth Amendment. Further, the John and Jane Doe Defendants are dismissed from this case.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 34) is GRANTED.

FURTHER, that the John and Jane Doe Defendants are dismissed.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

Dated:     March 8, 2006
           Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      United States District Judge